**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 00-41012

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE RAMON CORTEZ-IBARRA,
a/k/a RAMON CORTEZ,

Defendant - Appellant.

_____

Appeal from United States District Court
for the Southern District of Texas
(00-CR-163)

_____

December 3, 2001

Before BARKSDALE and STEWART, Circuit Judges, and ROSENTHAL, District Judge.[*]

PER CURIAM:[**]

Jose Ramon Cortez-Ibarra ("Cortez") pled guilty to an illegal reentry offense. Cortez now appeals his sentence, asserting that after reopening his sentencing hearing, the district court increased his sentence in retaliation for Cortez indicating that he intended to appeal the district court's decision. Further, Cortez argues that the district court erred in overruling his objection that his prior aggravated felony conviction could not be considered for sentencing purposes when the offense was not alleged in the indictment. For the following reasons, we find that the district court's increase in

---

[*] District Judge of the Southern District of Texas, sitting by designation.

[**] Pursuant to CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstance set forth in 5th CIR. R. 47.5.4.

Cortez's sentence was presumptively vindictive. Therefore, we reverse and vacate the district court's decision and reinstate the initial sentence of seventy-seven months. However, we affirm the district court's ruling on Cortez's Apprendi objection.

## FACTUAL HISTORY AND BACKGROUND

Cortez, a citizen of Mexico, was deported from the United States on January 19, 1999. Cortez's deportation arose from a burglary conviction, which is an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(G). On March 24, 2000, United States Border Patrol agents arrested Cortez in Brownsville, Texas for reentering the country without obtaining permission from the Attorney General. On April 11, 2000, an indictment charged Cortez with illegal reentry. Although the indictment noted that the crime was in violation of 8 U.S.C. § 1326(a) and (b),[1] it did not allege that Cortez had been convicted of a felony or an aggravated felony before his deportation.

---

[1] 8 U.S.C. § 1326(a) provides in pertinent part that:

Subject to subsection (b) of this section, any alien who–

(1) has been . . . deported, or removed or has departed the United States while an order of . . . deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless . . . prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission;

shall be fined . . . , or imprisoned not more than 2 years, or both.

Under 8 U.S.C. § 1326(b), in the case of any alien described under § 1326(a),

(1) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined . . ., imprisoned not more than 20 years, or both.

8 U.S.C. § 1326(b)(1999).

2

On June 28, 2000, Cortez pled guilty, and the court ordered the preparation of a presentence report ("PSR"). Cortez scored a total of twenty-two criminal history points, placing him in a criminal history category of VI.[2] Cortez's base offense level of eight was increased by sixteen levels because of his prior felony burglary.[3] After a three-level reduction for acceptance of responsibility, Cortez had a total offense level of twenty-one. Accordingly, Cortez's guideline range for imprisonment was seventy-seven to ninety-six months. During the sentencing hearing, Cortez objected to the report because the indictment did not allege his prior aggravated felony conviction. Cortez argued that, under Apprendi v. New Jersey, 530 U.S. 466 (2000), he should be sentenced to only two years imprisonment for illegal reentry and that his sentence should not be enhanced under § 1326(b)(2) and § 2L1.2 of the United States Sentencing Guidelines. The district court overruled Cortez's objection and adopted the report in full.

When given the opportunity to speak, Cortez asked for forgiveness for having reentered the country. The district court pointed out that Cortez should ask for forgiveness for "coming into our country and continually violating the law." Cortez then attempted to justify his criminal past by blaming it on drug use, which led to a discussion of his prior convictions. The district court noted that Cortez's prior criminal record was substantial and pronounced sentence at seventy-seven months imprisonment, three years supervised release and $100 special assessment.

---

[2]U.S. SENTENCING GUIDELINES MANUAL ch.5, pt. A. (2000).

[3]The guidelines for violations of §§ 1326(a) and 1326(b) are found in the U.S. SENTENCING GUIDELINES § 2L1.2(a) and calls for a base offense level of eight (8). Pursuant to § 2L1.2(b)(1)(A), the offense level is increased by sixteen levels (16) when the defendant was previously convicted of an aggravated felony and subsequently deported.

Following the pronouncement of sentence, the district court asked defense counsel if she had discussed the right of appeal with Cortez. Defense counsel answered affirmatively. Counsel then advised the district court "for the record, my client wants me to file a notice of appeal and I have advised we will do so." The district court then stated "[w]ait a minute, . . . you want her to appeal your case?" Cortez responded, "Yes. That's what I am fighting for, having entered illegally. I have already paid with time everything I have done in the United States." The district court asked Cortez to give a "good reason to appeal." Defense counsel then requested to confer with her client. The district court told counsel that if "[Cortez] wants to appeal, then I will consider the record like I haven't up till now." After a recess, defense counsel restated Cortez's desire to file an appeal. The district court informed Cortez that it had been preoccupied with other sentencings and would reopen Cortez's sentencing hearing so that it could focus proper attention on the facts contained in Cortez's PSR. At this point, the defense counsel again raised her Apprendi objection, which the district court denied. The district court admonished that it had reopened the matter in light of Cortez's intent to seek appellate review and the court's obligation to ensure that Cortez's sentencing proceeding was correctly carried out. Cortez responded that he would appeal anyway and asked the district court not to assess a sentence higher than the seventy-seven months simply because he decided to appeal.

The district court assured Cortez that it was only because it "had an opportunity to review the case in its entirety and assess matters as they should properly be assessed" that it concurred with the probation officer's recommendation that Cortez should be sentenced to ninety-six months imprisonment. Without further explanation, the judge stated that he " may be the only judge in this country that goes around giving four points, eight points, and [twelve] points in favor of defendants

depending upon the nature of past records." Thereafter, the district court increased Cortez's sentence to ninety-six months imprisonment, three years supervised release, and $100 special assessment. This appeal followed.

DISCUSSION

I.      Vindictive Sentencing

This court reviews the question of whether a sentence is vindictive de novo. Campbell, 106 U.S. 64, 66 (5th Cir. 1997). A presumption of vindictiveness attaches any time a defendant receives a harsher sentence on resentencing by the same judge who imposed the previous sentence. United States v. Resendez-Mendez, 251 F.3d 514, 517 (5th Cir. 2001) (citing North Carolina v. Pearce, 395 U.S. 711, 726 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1984)). This court has noted that "[the presumption] is a prophylactic one, addressed more to protect future litigants who appeal than to the justice done in the actual case" and that "[t]olerance of a court's vindictiveness might 'chill' a defendant's right to seek an appeal of her sentence." United States v. Campbell, 106 F.3d at 67 (citation omitted). "A defendant's exercise of a right to appeal must be free and unfettered," and "it is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice." Pearce, 395 U.S. at 724 (citation omitted).

To overcome this presumption of vindictiveness, "the resentencing court must articulate specific reasons, grounded in particularized facts that arise either from newly discovered evidence or from events that occur after the original sentencing." Resendez-Mendez, 251 F.3d at 519. The

district court's reasons for imposing a more severe sentence must "affirmatively appear" in the record and "be based on objective information" about the defendant's conduct that occurred after the original sentencing. Pearce, 395 U.S. at 726.[4]

Cortez argues that the district court's increase of his sentence was vindictive. Cortez maintains that the record clearly shows that the district court changed its sentence from seventy-seven to ninety-six months simply because Cortez expressed his desire to appeal. Specifically, Cortez pointed to the fact that the district court explicitly and repeatedly stated that it had reopened the sentencing because Cortez had stated he intended to appeal. Further, Cortez asserts that the district court's comment that it often gives sentencing breaks to illegal reentry defendants also shows its contempt for Cortez and his decision to appeal. Cortez requests that his sentence be vacated and his case be remanded for rehearing before another judge.

The Government, citing Resendez-Mendez, supports Cortez's claim and argues that the district court's stated reasons for increasing Cortez's sentence "do not rise to the level of newly discovered facts, changed circumstances or post-sentencing occurrences" regarding Cortez or his criminal history. 251 F.3d at 518. The Government asserts that this court should vacate Cortez's sentence of ninety-six months and reinstate his original seventy-seven month sentence.

We reverse and vacate the district court's sentencing of Cortez and hold that the sentence was presumptively vindictive. Accordingly, we order that Cortez's seventy-seven month sentence be reinstated. The district court's stated reason for reopening the sentencing hearing was that it was preoccupied in sentencing many other defendants and did not have the opportunity to thoroughly

---

[4]Although Pearce addressed a harsher sentence imposed on retrial and both Campbell and Resendez-Mendez dealt with sentencing after remand, we find that a presumption of vindictiveness also arises when a defendant receives a harsher sentence after his sentencing hearing has been reopened following his invocation of his intent to appeal his sentence.

review Cortez's PSR. However, the record shows that prior to imposing the seventy-seven month sentence, the district court stated that Cortez was convicted of "[b]urglary, unlawfully taking property, burglary about three or four times, possession of cocaine, assault with a deadly weapon." The district court then went on to characterize Cortez's record as substantial and as involving mortal turpitude. These statements made by the district court indicate that the district court fully reviewed Cortez's PSR before Cortez was sentenced to seventy-seven months imprisonment.

Further, this court finds that the district court's statement that it also reviewed the PSR to determine whether it contained information that "would be in [Cortez's] favor" does not provide objective support for the increased sentence. Pursuant to the United States Sentencing Guidelines, Cortez's range for imprisonment is seventy-seven to ninety-six months. The district court initially sentenced Cortez to seventy-seven months imprisonment, the lowest possible prison term that Cortez could have received. Therefore, reopening the sentencing hearing could not have benefitted Cortez. Accordingly, we find that the district court's resentencing of Cortez was presumptively vindictive because it was not based on either new information or subsequent occurrences that objectively support imposition of a higher sentence than had been ordered only moments earlier. We order that Cortez's seventy-seven month sentence be reinstated.

II.    Apprendi Objection

This court reviews de novo a challenge to the sufficiency of an indictment. United States v. Cabrera-Teran, 168 F.3d 141, 143 (5th. Cir. 1999) (citing United States v. Fitzgerald, 89 F.3d 218, 221 (5th Cir. 1996)). "Because an indictment is jurisdictional, defendants at any time may raise an objection to the indictment based on failure to charge an offense, and the defect is 'not waived by a guilty plea.'" Id. (quoting United States v. Morales-Rosales, 838 F.2d 1359, 1361-62 (5th Cir.

7

1988)).  An indictment must contain "the elements of the offense charged and fairly inform[] the defendant of the charge against" him.     Hamling v. United States, 418 U.S. 87, 117 (1974). However, an indictment "need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." Almendarez-Torres v. United States, 523 U.S. 224, 228 (1998).

Cortez argues that the "aggravated felony" provision of 8 U.S.C. § 1326(b)(2) is an essential element of the illegal reentry offense for which he is charged, rather than a sentencing enhancement factor.  Accordingly, Cortez asserts that the offense must be pled in the indictment.  Cortez maintains that because his indictment did not allege that his prior deportation followed an aggravated felony, the maximum sentence that he could receive is two years under 8 U.S.C. § 1326(a).  This argument has been expressly rejected by the Supreme Court in Almendarez-Torres, 523 U.S. at 226-27.

In Almendarez-Torres, a grand jury issued an indictment charging Almendarez-Torres ("Almendarez") with having been found in the United States after being deported without receiving permission from the Attorney General.  Id. at 226.   Almendarez pled guilty to the offense and admitted that his earlier deportation was the result of three aggravat ed felony convictions.  At his sentencing hearing, Almendarez argued that his indictment had not mentioned his earlier aggravated felony convictions and, therefore, he asserted that the district court could not sentence him to more than two years imprisonment, the maximum authorized for an offender without a previous conviction. The district court rejected this argument and imposed an eighty-five month sentence.

On appeal, this court upheld the district court's decision, and the case was then brought before the Supreme Court.  The Supreme Court held that § 1326(b)(2) is a "penalty provision which simply authorizes an enhanced sentence." Id.  The Court reasoned that "[s]ince this section does not

8

create a separate crime, the Government is not required to charge the fact of an earlier conviction in the indictment." Id.

Cortez concedes the fact that his argument has been rejected by the Supreme Court. However, Cortez argues that the recent Supreme Court decision in Apprendi v. New Jersey, 530 U.S. 466 (2000) allows this court to revisit the issue. In Apprendi, the Supreme Court struck down a New Jersey "hate crime" sentencing enhancement statute that allowed a judge to increase a defendant's sentence beyond the statutory maximum "if the trial court [found], by a preponderance of the evidence, that 'the defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals . . . .'" 530 U.S. at 468-69. The Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. Id. at 490. This court has noted that in Apprendi, the Supreme Court has "expressly declined to overrule Almendarez-Torres." United States v. Dabeit, 231 F.3d 979, 984 (5th Cir. 2000). Accordingly, we must follow the precedent set forth in Almendarez-Torres "unless and until the Supreme Court itself determines to overrule it." Id.

CONCLUSION

We find that the district court's resentencing of Cortez after reopening his sentencing hearing was presumptively vindictive. Accordingly, we REVERSE and VACATE Cortez's ninety-six month sentence and reinstate his original sentence of seventy-seven months imprisonment, three years supervised release and $100 special assessment.

9

With respect to Cortez's <u>Apprendi</u> objection, we find that the Supreme Court has not overruled <u>Almendarez-Torres</u>; therefore, the district court properly overruled Cortez's objection. Accordingly, we AFFIRM the district court's decision in this regard.

REVERSED and VACATED in part; AFFIRMED in part.